UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____ :
                            :
CAROL E. NATALE             :
                            :
            Plaintiff,      :       Civil Action No.
                            :       13-1254
            v.              :
                            :
EAST COAST SALON SERVICES, INC.:    OPINION
and STAN KLET               :
                            :
            Defendants.     :
                            :
_____ :
```

<u>Appearances</u>:

ARI R. KARPF
JEREMY M. CERUTTI
MARK THOMAS SOTTILE
KARPF, KARPF & CERUTTI, P.C.
3331 STREET ROAD, SUITE 128
TWO GREENWOOD SQUARE
BENSALEM, PA 19020
     *Attorneys for Plaintiff*

MICHAEL S. HANAN
MICHAEL THOMAS MIANO
RONALD A. GILLER
ELIOR DANIEL SHILOH
GORDON & REES LLP
18 COLUMBIA TURNPIKE
SUITE 220
FLORHAM PARK, NJ 07932
     *Attorneys for Defendants*

**HILLMAN, District Judge**

        Plaintiff filed a complaint alleging violations of the Age

Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et.

seq., and the New Jersey Law against Discrimination (NJLAD).
Before the Court is defendants' motion for summary judgment.
Plaintiff does not contest defendants' motion to dismiss her
NJLAD claim or to dismiss her claims against defendant Stan
Klet.  Therefore, defendants' motion will be granted as to both.
However, plaintiff does contest dismissal of her ADEA claim.
For reasons explained below, defendants' motion will be denied
as to plaintiff's ADEA claim.


I. **BACKGROUND**

    Plaintiff, Carol E. Natale, was employed by East Coast
Salon Services, Inc. ("ECE").[1]  ECE is a family-owned wholesale
distributor of beauty supplies that sells exclusively to
licensed cosmetologists.  ECE's wholesale stores are generally
serviced by a manager and sales associates, whose
responsibilities include customer service, sales, answering the
telephone, stocking, cleaning and packing orders.  ECE hired
plaintiff as a sales associate at its Bensalem, Pennsylvania,
store starting on November 6, 2006.  Plaintiff was 59 years old
when she was hired.  Plaintiff's supervisor was Faith Fritz who
made the decision to hire Plaintiff.

---

[1] Defendants use the initials "ECE" rather than "ECS" or "ECSS".
For continuity, the Court will adopt defendants' abbreviation of
their company name.

During her employment, plaintiff received (1) a written warning on December 3, 2009, for sitting in the back room and doing personal work on company time; (2) a written warning on September 8, 2010, for opening the store late; and (3) a written warning on October 18, 2011, for excessive time off.  Plaintiff states that the October 18, 2011 written warning was never received by her or discussed with her by Fritz.  She states the first time she saw the October 18, 2011 warning was at her deposition and that she did not refuse to sign it even though those words were written on the document.

In October 2011, plaintiff states that her hours were cut, and that she was not scheduled to work more than two Tuesdays in the final months of her employment.[2]  Plaintiff states that a younger employee, Kathi Timney, who was 49 years old at the time of plaintiff's termination and 15 years younger than plaintiff, began to work on Tuesdays in place of plaintiff.

Plaintiff states that Fritz sought part-time employees in anticipation of terminating plaintiff's employment.  An email dated October 17, 2011, from Fritz to ECE Regional Manager Sonya Protack states in part, "I wanted to ask a few questions. I want to know what I have to do to let Carol go."; and "I (Ms. Fritz)

---

[2] Defendants state that plaintiff's overall hours increased in November and December – the two months prior to her termination. Whether there is any significance to working on Tuesdays is unclear.

3

really do want to look into hiring two part-time people."; "I really don't want to be left with just Kathi and myself."

On December 5, 2011, Fritz emailed Street and Protack about a "possible new hire" and states that after interviewing she narrowed it down to one person, Celeste Mariano, and asks "what can I offer her?" Mariano was hired on January 3, 2013, and was 40 years old at the time of her hire.

On January 12, 2012, ECE's owner, defendant Stan Klet, called the Bensalem store to talk to Faith Fritz about a sale. Protack was with Klet and heard the entire conversation because the call was on speakerphone. Plaintiff answered the telephone by saying "East Coast Salon, how can I help you?" Plaintiff did not identify herself by name. Plaintiff states that she has answered the phone this way during her entire five years of employment. Klet asked plaintiff for her name, but plaintiff asked, "Is this Ralph?" because she thought it was ECE's IT person. Klet responded "it's Stan" to which plaintiff stated "Mr. Klet?" to which Klet replied, "no, it's not Mr. Klet; it's Stan." Klet then stated "Obviously, you missed the training protocol on how to properly answer the telephone." Plaintiff states that there was no telephone protocol or training.[3] She

---

[3] Other employees testified that they gave their name when answering the phone. Whether this was an official telephone protocol is a factual dispute.

also testified that Klet's comment "set a battle line right there" and that she became defensive.  Klet told plaintiff to state her name when answering the telephone.

Defendants maintain that plaintiff challenged Klet's instructions about stating her name when answering the phone, was recalcitrant and argued with Klet.  Plaintiff maintains that she apologized to Klet, did not argue with him and that it was Klet who "escalated" the conversation.

Klet then asked to speak with Fritz and plaintiff told him she was out to lunch.  Plaintiff states that Klet "badgered" her about questions regarding Fritz's whereabouts.  Klet told plaintiff he was displeased with her demeanor toward him, that the call was on speakerphone, and that someone (Protack) was with him and heard the entire conversation.  Plaintiff responded that she would continue the conversation at a later date.  Klet stated that there was nothing else to discuss, and that plaintiff needed to answer the ECE telephone in the manner he had instructed.  Plaintiff responded to Klet that they can "discuss it over tomatoes."  Klet then told plaintiff to tell Fritz to call him when she returned and the call ended.

Defendants state that Protack and the ECE Human Resources Director Joanne Street decided to terminate plaintiff based on the telephone incident with Klet on grounds that she was disrespectful and showed insubordinate behavior towards the

owner of ECE.  Street emailed the formal discharge to Fritz who was instructed to immediately terminate plaintiff.  Plaintiff argues that although the termination notice only lists the insubordination as the reason for termination, defendants later in discovery responses stated that she was terminated for several reasons including doing personal work on December 2, 2009, opening the store late on August 30, 2010, and excessive time off.

Plaintiff argues that prior to her termination, several discriminatory remarks concerning her age were made by Fritz towards her during her employment.  Specifically, that Fritz said plaintiff was wearing "old lady pull up pants," (a reference to plaintiff's jeans with an elastic insert); that she told plaintiff a couple times that she "would look younger if (her) nails were squared off."; that Fritz would send plaintiff home for wearing "old lady shoes."; that when plaintiff showed Fritz a new pair of sneakers, Fritz told her "Don't wear those in here. You look like a retarded old nurse."; that plaintiff was "old enough to be her grandmother" after plaintiff said she was not "trying to be (Ms. Fritz's) mother" in discussing personal matters.[4]  Plaintiff maintains that Fritz recommended to HR that she be terminated prior to the phone call with Klet.

---

[4]  There is a factual dispute over whether these comments were made.

6

## II.  JURISDICTION

Alleged violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, implicates federal question jurisdiction and, therefore, this matter is properly before the Court pursuant to 28 U.S.C. § 1331.

## III. DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56.

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence;

instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).  Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

Plaintiff filed a complaint alleging violations of the ADEA.  Defendants now move to dismiss plaintiff's ADEA claim.


**B. AEDA Claim**

In Showalter v. University of Pittsburgh Medical Center, 190 F.3d 231, 234-35 (3d Cir. 1999), the Third Circuit outlined how to properly apply the burden-shifting standard in AEDA

claims.[5]  "First, the plaintiff must produce evidence that is
sufficient to convince a reasonable factfinder to find all of
the elements of a *prima facie* case.... When the plaintiff
alleges unlawful discharge based on age, the *prima facie* case
requires proof that (i) the plaintiff was a member of the
protected class, i.e., was 40 years of age or older (see 29
U.S.C. § 631(a)), (ii) that the plaintiff was discharged, (iii)
that the plaintiff was qualified for the job, and (iv) that the
plaintiff was replaced by a sufficiently younger person to
create an inference of age discrimination."  Id. (quoting Keller
v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir.
1997)); see Maresca v. Blue Ridge Communications, 363 F. App'x

_____

[5] In 2009, the Supreme Court declined to apply the "mixed motive"
burden shifting analysis of Price Waterhouse for disparate
treatment claim pursuant to the ADEA, and held that a plaintiff
must prove "by a preponderance of the evidence, that age was the
'but—for' cause of the challenged adverse employment action,"
such that the burden of persuasion "does not shift to the
employer to show that it would have taken the action regardless
of age, even when a plaintiff has produced some evidence that
age was one motivating factor in that decision."  Gross v. FBL
Fin. Servs., Inc., 557 U.S. 167, 180, 129 S.Ct. 2343, 2352, 174
L.Ed.2d 119 (2009).  In Johnson v. Delaware County Juvenile
Detention Center, 545 Fed.App'x 135, 139 (3d Cir. 2013), the
Third Circuit limited the holding in Gross to mixed motive
cases, not pretext theory cases ("Johnson's claims of
discrimination are based on a pretext theory, not mixed-motive
and, thus, Gross is inapplicable.").  In this case, the
plaintiff does not present direct evidence of discrimination and
both parties proceed under the McDonald Douglass burden shifting
paradigm.  Thus, the Court follows Johnson and applies the
McDonald Douglass burden shifting paradigm.

882, 885 (3d Cir. 2010) (commenting that this is a modified version of the McDonnell Douglas burden-shifting framework).

"If the plaintiff establishes a *prima facie* case, then '[t]he burden of production (but not the burden of persuasion) shifts to the defendant, who must then offer evidence that is sufficient, if believed, to support a finding that it had a legitimate, nondiscriminatory reason for the discharge.'" Showalter, 190 F.3d at 234-35 (quoting Keller, 130 F.3d at 1108 (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993)).  "... [I]f the defendant satisfies this burden, then the burden of production shifts back to the plaintiff to proffer evidence 'from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" Id. (quoting Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994)).

Plaintiff has plead a *prima facie* case: i) she is 66 years old; (ii) she was discharged, (iii) she was qualified for the job, and (iv) she was replaced by a sufficiently younger person – a 40 year old woman - to create an inference of age discrimination.  See Showalter, 190 F.3d at 234-35.

Defendants argue that plaintiff was discharged for her disrespectful, argumentative and insubordinate conduct towards

10

ECE owner and president, Stan Klet. As outlined above, the interchange between plaintiff and Klet indicates that the two engaged in hostilities over the telephone, and testimony by those who overhead the conversation concur that the conversation was not an amicable one. Firing an employee for rude or disrespectful behavior or comments is a legitimate, non-discriminatory reason for termination. See Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (finding employer easily met burden by introducing evidence that employee fired for insubordination). Therefore, defendants have met their burden.

Plaintiff, however, has presented sufficient evidence to put to a jury that defendants' proffered reason was pretext. Plaintiff has alleged that Fritz made discriminatory comments about her age and recommended that plaintiff be terminated prior to the phone call with Klet. Plaintiff has also alleged disparate treatment of her in cutting her Tuesday hours to the benefit of a younger employee. Plaintiff has further alleged that defendant hired a substantially younger replacement about a week before plaintiff was terminated, a hiring process begun by Fritz after she recommended plaintiff's termination.[6]

---

[6] Plaintiff also argues that defendants varied in their reasons for terminating plaintiff. Although defendants presented additional reasons (lateness, doing personal work on employer time, and excessive time off), they have not wavered in their position that plaintiff was fired for insubordination following her phone call with Klet.

11

Although defendants argue that Fritz did not make the decision to fire plaintiff, "discriminatory comments by nondecisionmakers, or statements temporally remote from the decision at issue, may properly be used to build a circumstantial case of discrimination." Lockhart v. Westinghouse Credit Corp., 879 F.2d 43, 54 (3d Cir. 1989)(citations omitted).  However, "[s]tray remarks by non-decision makers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992).  Whether Fritz's comments towards plaintiff based on age is circumstantial evidence of a decision to terminate based on age discrimination, or whether they were just stray remarks, is a question for the jury.

Accordingly, plaintiff has met her burden in alleging facts sufficient to show that defendants' proffered reason for her termination was pretext.  Therefore, defendants' motion for summary judgment is denied.


**IV. <u>CONCLUSION</u>**

For the foregoing reasons, defendants' motion for summary judgment will be granted in part and denied in part. Plaintiff's NJLAD claim and claims against defendant Stan Klet

12

shall be dismissed.  Defendants' motion will be denied as to plaintiff's ADEA claim.

    An Order consistent with this Opinion shall be entered.


                       s/Noel L. Hillman

At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

Dated:  September 30, 2014